IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MEGAN DONOHUE                    :          CIVIL ACTION
                                 :          NO. 12-1460
        v.                       :
                                 :
REGIONAL ADJUSTMENT BUREAU,      :
INC., et al.                     :

O'NEILL, J.                                 FEBRUARY 19, 2013


**<u>MEMORANDUM</u>**

Now before me are defendants Pennsylvania Higher Education Assistance Agency and

the PHEAA individual defendants[1] (collectively, the PHEAA defendants)[2] motion to dismiss the

second amended complaint (Dkt. No. 20), plaintiff Meghan Donohue's reply thereto (Dkt. No.

25), plaintiffs notice of recent authority in further support of her reply (Dkt. No. 31) and

defendants response thereto[3] (Dkt. No. 32).  For the following reasons I will grant PHEAA's

motion.

**BACKGROUND**

---

[1] Plaintiff names James L. Preston, Stephanie Foltz, Timothy A. Guenther, Nathan Hench, Brian Lecher, Scott E. Miller, Todd E. Mosko, Matthew D. Sessa, Jason L. Swartley, John Doe 1 as defendants, individually and as members of PHEAA's Executive Committee. Second Am. Compl. ¶¶ 10-20.  In the caption of the second amended complaint, Donohue identifies Jane Doe 1 as a member of PHEAA's Executive Committee.  In the body of the second amended complaint, however, she alleges that Jane Doe 1 acted on behalf of defendant Regional Adjustment Bureau, Inc. Id. ¶¶ 46-50.

[2] Defendant Enterprise Recovery Systems, Inc. has filed a separate motion to dismiss (Dkt. No. 15).  To date, defendant Regional Adjustment Bureau, Inc. has neither answered nor moved to dismiss plaintiff's second amended complaint.

[3] Donohue urges me not to consider a portion of this response.  While I find that PHEAA's submission was not improper in accordance with my policies and procedures, consideration of it did not change my analysis of the instant motion.

Donohue alleges that on or about August 2, 2011, American Education Services (an alias of the PHEAA) sent her a letter concerning a loan rehabilitation program available for her federal student loans which were in default. Second Am. Compl. ¶ 29. She alleges that the letter enclosed a Rehabilitation Loan Program Agreement that required that Donohue, as a condition of rehabilitation, "remit satisfactory monthly payments for a minimum of nine consecutive months. . . ." <u>Id.</u> at ¶ 30. On or about September 23, 2011, AES sent a letter to Donohue concerning the loan rehabilitation program that enclosed a Rehabilitation Loan Program Agreement which reiterated that as a condition of rehabilitation Donohue was required to "remit satisfactory monthly payments for a minimum of nine consecutive months." <u>Id.</u> at ¶¶ 31-32.[4] "Also included was the following statement, '[i]n addition to wage garnishment and referral to an outside collection agency, your continued failure to repay this debt will result in the offset of any federal refunds you may be due.'" <u>Id.</u> at ¶ 33. Donohue further alleges that AES sent similar Term Letters to the class members concerning the loan rehabilitation program. <u>Id.</u> at ¶ 34. Specifically Donohue alleges that "PHEAA, by and through the individually named defendant Jeff Capello and otherwise, . . . has engaged in collection activity against plaintiff for six (6) federal student loan debts totaling $28,981.86." <u>Id.</u> at ¶ 35.

On or about December 16, 2011 PHEAA garnished wages for said student loans owed in the amount of approximately $600 per month, a sum that Donohue alleges "was not based on the type of consideration of a debtor's financial circumstances." <u>Id.</u> at ¶ 36.

> In order to lift the garnishment, remove the corresponding 'I9' credit reporting comparable to bankruptcy, and prevent [Donohue's] tax return garnishment as well, PHEAA advised [Donohue] she would be required to:

---

[4] There are no details in the complaint about what the term letters required in terms of "satisfactory monthly payments."

> a. make a down payment of 10% (approximately
> $3,000) and permit automatic monthly payment
> deductions from her bank account of $300; or , if
> unable to make the down payment;
>
>
> b. authorize monthly payment deductions from her
> bank account of $600.

Id. at ¶ 37.  PHEAA allegedly "promised that after nine to eleven months, the 'I9' remark would

be removed from [Donohue's] credit report, and payments would continue thereafter until the

debt was paid in full."  Id. at ¶ 38.  Donohue does not allege that she actually attempted to

rehabilitate her defaulted federal student loans or that she would have been able to do so.  Def.'s

Motion Dismiss. ECF p. 8.  Additionally, as the PHEAA defendants point out, Donohue does not

allege that she justifiably relied upon PHEAA's alleged misrepresentations in electing not to

rehabilitate her defaulted federal student loans.  Id.

Donohue also brings suit on behalf of two classes of Pennsylvania borrowers.  Second

Am. Compl. at ¶ 34.  Donohue defines first proposed class, Class A, as "a Class of Pennsylvania

borrowers for claims under the [Fair Debt Collection Practices Act] for all federal loan debtors

whose loans went into default, had no judgment obtained related to the default, and were

collected upon by ERS or RAB."  Second Am. Compl. ¶ 55.  She alleges that the

> principal question is whether Defendants ERS, RAB, and PHEAA
> violated the FDCPA and FCEAU by failing to make required
> disclosures and calculations (or making disclosures and
> calculations that are at odds with those under the Federal student
> loan rehabilitation program) of required rehabilitation payments,
> failing to disclose the fact that nine timely payments of these new
> payments in 10 consecutive months would rehabilitate the loam,
> and providing the expedited route to removal of default from credit
> reports.

Id. at ¶ 57.  The second proposed class is defined as "a class of Pennsylvania borrowers under the

[Pennsylvania Unfair Trade Practices and Consumer Protection Law, Fair Credit Extension

Uniformity Act], and common law where said federal loans went into default, had no judgment obtained related to the default, and were owned and/or serviced by PHEAA. . . ." Id. at ¶ 55. In this class the

> principal question is whether Defendants, excluding PHEAA, violated the UTPCPL, by failing to make required disclosures and calculations (or making disclosures and calculations that are at odds with those under the Federal student loan rehabilitation program) of required rehabilitation payments, failing to disclose the fact that nine timely payments of these new payments in 10 consecutive months would rehabilitate the loam, and providing the expedited route to removal of default from credit reports.

Id. at ¶ 58.[5]

In Count I of her second amended complaint, Donohue asserts claims under the FDCPA on behalf of herself and the members of proposed Class A against defendants ERS, RAB and PHEAA. Id. ¶¶ 64-67. She contends that in its efforts to collect on her student loans, PHEAA was attempting to collect a "debt" as defined by the FDCP—a debt which was incurred for personal, family or household purposes. Id. at ¶ 65. Donohue asserts that PHEAA violated the FDCPA by, inter alia, 1) engaging in conduct the natural consequence of which is to harass, oppress, or abuse a person; 2) making false representations of the character, amount, or legal status of any debt; 3) representing that nonpayment of any debt will result in the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action; 4) falsely representing legal action that cannot be taken; 5) falsely representing that Donohue's nursing license could be taken; and 6) attempting to collect a debt not permitted by law. Id. at ¶ 67.

---

[5] Count II of Donohue's second amended complaint also asserts a claim under the FCEUA on behalf of herself and the members of proposed Class B against defendants ERS and RAB. Second Am. Compl. ¶¶ 68-79. The Complaint does not name PHEAA as a defendant in Class B. Second Am. Compl. ¶ 58. Per a stipulation of the parties, Donohue has withdrawn her FCEAU claim against PHEAA. See Dkt. No. 22.

In Count II of her second amended complaint, Donohue asserts claims under the UTPCPL on behalf of herself and the members of proposed Class B against defendants ERS, RAB and the PHEAA. Id. ¶¶ 68-79. She alleges that because of the acts and omissions of the defendants in their collection contacts with her, Donohue has been deprived of lawful rehabilitation options for her student loans. Id. at ¶ 74. She claims that she "and Class A [sic] have suffered ascertainable loss by the monthly dollar differential between what she is currently paying under the onerous garnishment plan and what she would have paid under a rehabilitation plan that was affordable based on a fair accounting of her monthly finances and expenses." Id. at ¶ 76.

Count III of Donohue's second amended complaint asserts a claim under the UTPCPL on behalf of herself and proposed Class B against the members of the PHEAA Executive Committee. She contends that the conduct of the PHEAA Executive Committee constituted an "unfair or deceptive practice" within the meaning of the UTPCPL in that: 1) the members of the committee represented that its services had the approval, characteristics, and benefits of lawful and affordable rehabilitation options that its services did not have; 2) the committee, by act and omission, deceptively misrepresented the lawful and affordable rehabilitation options available to Donohue thereby causing a likelihood of confusion or misunderstanding as to the availability of such options to her; and 3) the members of the committee's actions violated the FDCPA by their deceptive and unfair actions which thereby constitute per se violation of the UTPCPL. Id. at ¶ 78. She asserts that as a "result of the above violations of the UTPCPL by [the ] PHEAA [Executive Committee]," she and the members of class B "have suffered ascertainable loss by the monthly dollar differential between what she is currently paying under the onerous

garnishment plan and what she would have paid under a rehabilitation plan that was affordable based on a fair accounting of her monthly finances and expenses." Id. at ¶ 78.

PHEAA and the PHEAA individual defendants have moved to dismiss plaintiff's claims against them in their entirety.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Typically, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," though plaintiff's obligation to state the grounds of entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." Id. (citations omitted). The complaint must state "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Wilkerson v. New Media Tech. Charter Sch. Inc., 522 F.3d 315, 321 (3d Cir. 2008), quoting Twombly, 550 U.S. at 556. The Court of Appeals has made clear that after Ashcroft v. Iqbal, 556 U.S. 662 (2009), "'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009), quoting Iqbal, 556 U.S. at 678. The Court also set forth a two part-analysis for reviewing motions to dismiss in light of Twombly and Iqbal:

> First, the factual and legal elements of a claim should be separated. The District
> Court must accept all of the complaint's well-pleaded facts as true, but may

disregard any legal conclusions.  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."

Id. at 210-11, quoting Iqbal, 556 U.S. at 679.  The Court explained, "a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts."  Id., citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679.

## DISCUSSION

## I.     Count I:  Violations of the FDPCA

I will dismiss Count I of plaintiff's complaint because I find that PHEAA is not a debt collector subject to the FDCPA.  The FDCPA protects debtors from "abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e).  It is to be construed broadly so as to effect its purpose, Womack v. Nat'l Action Fin. Services, No. 06-4935, 2007 WL 2155669, at *3 (E.D. Pa. July 25, 2007), citing Brown v. Card Serv. Ctr., 464 F.3d 450, 453 (3d Cir. 2006), and provides a remedy for debtors who have been subjected to abusive, deceptive or unfair debt collection practices.  Pollice v. Nat'l Tax Funding, L.P., 225 F.3d 379, 400 (3d Cir. 2000).  The provisions of the FDCPA generally apply only to debt collectors.  Id. at 403.  To state a claim under the FDCPA, a plaintiff must establish that "(1) he

or she is a 'consumer'[6] who is harmed by violations of the FDCPA; (2) the 'debt'[7] arises out of a

transaction entered into primarily for personal, family, or household purposes; (3) the defendant

collecting the debt is a 'debt collector'; and (4) the defendant has violated, by act or omission, a

provision of the FDCPA."  Berk v. J.P. Morgan Chase Bank, N.A., No. 11–2715, 2011 WL

4467746, at *3 (E.D.Pa. Sept.26, 2011), citing 15 U.S.C. § 1692a-o.

The statute defines a "debt collector" as any person who "regularly collects or attempts to

collect . . .  debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).[8]

---

[6] The Act defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3).

[7] "Debt" is defined under the FDCPA as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."  Dixon v. Golden-Masano-Bradley, Law Firm, 228 F. App'x 142, 143-44 (3d Cir. 2007), quoting 15 U.S.C. § 1692a(5).

[8] The statutory definition excludes several categories of persons including, inter alia:

 **(A)** any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor;

 **(B)** any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts;

 **(C)** any officer or employee of . . . any State to the extent that collecting or attempting to collect any debt is in the performance of his official duties;

 [. . .]

 **(F)** any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

The Court of Appeals instructs that "[c]reditors—as opposed to 'debt collectors'—generally are not subject to the FDCPA." Pollice, 225 F.3d at 403. That is "[t]he [FDCPA] does not apply to persons or businesses collecting debts on their own behalf." Staub v. Harris, 626 F.2d 275, 277 (3d Cir. 1980).[9] Thus, as the Court of Appeals notes, "[w]hether or not a debt collector acts deceptively is clearly not part of what makes it a debt collector subject to the FDCPA's requirements." Siwulec v. J.M. Adjustment Services, LLC, 465 F. App'x 200, 203 (3d Cir. 2012). Instead, "a business may be a 'debt collector' because its 'principal purpose' is the collection of debts or because it 'regularly' engages in the collection of debts," but "this definition of 'debt collector' excludes creditors who attempt to collect their own debts." Oppong v. First Union Mortg. Corp., 215 F. App'x 114, 118 (3d Cir. 2007).

The PHEAA defendants argue that "the FDCPA does not apply to federal student loan guaranty agencies like PHEAA under the facts alleged." Def.'s Mot. Dismiss ECF p. 10. In support of this contention, they aver that PHEAA is a "state instrumentality of the

---

15 U.S.C.A. § 1692(a)(6).

[9] The Court of Appeals has explained that

> The term "debt collector," subject to the exclusions discussed below, was intended to cover all third persons who regularly collect debts. "The primary persons intended to be covered are independent debt collectors." The Senate Committee explained that the FDCPA was limited to third-party collectors of past due debts because, unlike creditors, "who generally are restrained by the desire to protect their good will when collecting past due accounts," independent collectors are likely to have "no future contact with the consumer and often are unconcerned with the consumer's opinion of them."

F.T.C. v. Check Investors, Inc., 502 F.3d 159, 173 (3d Cir. 2007), quoting S. Rep. No. 382, S. REP. 95-382, 2, 1977 U.S.C.C.A.N. 1695, 1696-97 (internal citations omitted).

Commonwealth of Pennsylvania . . . [that] served as the loan guarantor for multiple federal student loans borrowed by Donohue." Id. at 7. The PHEAA defendants assert that

> [t]o evidence her obligation to repay the federal student loans, Donohue signed two Federal Stafford Loan Master Promissory Notes . . . Pursuant to their express terms, the MPNs also include any disclosure statements relating to the loans. The disclosure statements identify [AES] as the guarantor of Donohue's student loans. AES is a fictitious name utilized by PHEAA.

Id. at 11 (citations omitted). Upon default, PHEAA, as guarantor of Donohue's loan, employed collection efforts against Donohue as mandated by the Department of Education; as part of its collection efforts, PHEAA advised Donohue of her ability to enroll in the "Loan Rehabilitation Program." Id. at 7, 12; see also Second. Am. Compl. ¶¶ 29-33. "Despite being advised of the Program, Donohue did not attempt to rehabilitate her defaulted student loans guaranteed by PHEAA. Consequently, after notice, on or about December 16, 2011 . . . PHEAA began garnishing Donohue's wages," a power that PHEAA argues it possesses by statute, and continues to do so. Def.'s Mot. Dismiss ECF p. 12, citing 20 U.S.C. 1095a. PHEAA contends that these collection efforts were undertaken incidental to its role as a fiduciary to the Department of Education, and because of this fiduciary role that it falls within an exception to the statutory definition of debt collector. Id. at 14; see also 15 U.S.C. 1692a(6)(F)(i) (defining "debt collector" as not including "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement").

Donohue disagrees and argues that PHEAA, "[r]ather than offer [her] such a loan rehabilitation option, [PHEAA] misrepresented certain terms of the program, such as the number of months payments would need to be made to rehabilitate her loan, and never made the individual calculation of a reasonable monthly payment based on [her] economic circumstances."

Pl.'s Reply Br. ECF p. 6.  Instead, she contends PHEAA "offered an onerous payment time table accelerated beyond the rehabilitation plan to which Plaintiff was entitled, and quickly began garnishing Plaintiff's wages for $600.00 a month, a sum far in excess of the monthly payments she is actually entitled to under the Federal student loan rehabilitation program." Id.  Donohue further argues that PHEAA "violated the FDCPA when it endeavored to collect on her defaulted student loan through several prohibited means including harassment, false representations and deceptions." Id. at 8.  In this endeavor, Donohue argues that PHEAA acted like a debt collector and that the ownership of the allegedly defaulted loan is immaterial. Id.  Thus, Donohue alleges that PHEAA's conduct constitutes a failure to comport with the collection procedures outlined in the regulations governing the conduct of student loans guarantors and removes PHEAA from any fiduciary position in relation to the Department of Education. Id. at 10-12.

Moreover, Donohue contends that PHEAA, in arguing that it is not a covered actor under the FDCPA,

> goes well beyond the four corners of the complaint, and offers documents it claims exempt it from regulation under the FDCPA, [attaching] to its Motion several documents it claims are the Master Promissory Notes for the underlying loans as well as other documentation related to the loans that appear to have been printed out by Defendant.  These documents, Defendant argues, establish that it is a "guarantor" of Plaintiff's loans (d/b/a AES) which are owned by someone else.

Id. at 8-9.  Donohue urges me not to consider these documents because the "authenticity of these documents has not been established, and these documents are not 'public' so as to undoubtedly speak for themselves.  Moreover, [Donohue] does not base her claims on any of these

documents, or claim that Defendant acted in violation of any term within the initial loan

documents." Id. at 9.[10]  Donohue further argues that

> even if the documents could be properly considered by the Court,
> Defendant's argument fails [because . . .] in the complaint [. . .
> PHEAA] is alleged to have acted as a debt collector and not as a
> fiduciary to the Department of Education or any creditor [and . . .]
> the nature of its alleged wrongdoing is at variance with and in
> excess of any mandate it had as a fiduciary to any creditor.  That is,

---

[10] Donohue argues that I should not consider these documents because she neither attached them to the complaint nor based her claims on them.  Pl.'s Reply Br. at ECF p. 8-9.  As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings.  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).  However, a "document *integral to or explicitly relied* upon in the complaint" may be considered "without converting the motion [to dismiss] into one for summary judgment."  Id.; see also Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted, emphasis in original), cert. denied, 510 U.S. 1042 (1994) ("A court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.  Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied").  Donohue does not dispute the authenticity of the loan documents submitted by PHEAA but rather argues that the documents "authenticity has not been established" and in any case, she asserts that she does not base her claims on the documents.  Pl.'s Reply Br. ECF p. 9.  Because Donohue, having had the opportunity to do so, does not dispute the document's authenticity, I find that these documents establish that AES was the guarantor of her student loans.  I also find that they are integral to the claim in that these documents are the agreements between Donohue and PHEAA which are the basis of the action.

Additionally, "the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated "[w]here plaintiff has actual notice ... and has relied upon these documents in framing the complaint."  In re Burlington Coat Factory Sec. Litig., 114 F.3d at 1426.  The exhibits to PHEAA's motion are two Master Promissory Notes for Donohue's student loans, to which she is a signatory, see Def.'s Mot. Dismiss, Ex. A, ECF p. 32, 42, and the disclosure statements connected to these loans, which describe various aspects of the loan, including the educational institution the loan has been approved for disbursement to, the dates of disbursement and the guarantor of the loan.  See e.g., Def.'s Mot. Dismiss, Ex. B, ECF p. 53-54.  I thus find that considering these documents in connection with the instant motion to be appropriate and that Donohue has had both notice of the documents and an opportunity to contest their validity but has chosen not to do so and thus my consideration of them in this case does not implicate the problems with such consideration identified by the Court of Appeals above.

> its alleged actions were not "incidental to a bona fide fiduciary
> obligation", but rather were at odds with any such obligation.

Id. at 10.

While Donohue is a consumer and her student loans qualify as a debt, I find that PHEAA

is not a debt collector under the Act because it falls into one of the enumerated exclusions,

namely, that PHEAA was attempting to collect a debt incidental to a bona fide fiduciary

obligation.[11]  15 U.S.C. 1692(a)(6)(F)(i).  The loans in question are Federal Family Education

Loan Program Loans (FFELP) student loans, see Second Am. Compl. ¶ 35, made available

pursuant to the Higher Education Act and administered under the auspices of the Department of

Education.  "'Under the HEA, eligible lenders make guaranteed loans on favorable terms to

students or parents to help finance student education."  Rowe v. Educ. Credit Mgmt. Corp., 559

F.3d 1028, 1030 (9th Cir. 2009) (internal quotation marks and citations omitted).  PHEAA is

such an eligible lender.  24 Pa. Stat. Ann. § 5104.

HEA "loans are typically guaranteed by guaranty agencies and are ultimately reinsured

by the DOE."  Rowe, 559 F.3d at 1030 (internal quotation marks and citations omitted).  A

"guaranty agency" is defined in the FFELP regulations as "[a] state or private nonprofit

organization that has an agreement with the Secretary under which it will administer a loan

guarantee program under the [HEA]."  34 C.F.R. § 682.200; see also id. § 682.401(a) ("In order

to participate in the FFEL programs, a guaranty agency shall enter into a basic agreement with

the Secretary.").  "In essence [a guaranty agency] is an intermediary between the United States

and the lender of the student loan.  The United States is the loan guarantor of last resort.  [The

---

[11] Having found that Donohue fails to satisfy one element, I need not reach whether
PHEAA's debt collection efforts violate the Act.

guaranty agency] assists the United States in performing that function." Rowe, 559 F.3d at 1030,

quoting Great Lakes Higher Educ. Corp. v. Cavazos, 911 F.2d 10, 15 (7th Cir. 1990).

FFELP regulations describe the relationship between a guaranty agency and the DOE as a

fiduciary relationship. See 34 C.F.R. § 682.410(a)(11)(iii) (referring to the guaranty agency as "a

fiduciary under its agreements with the Secretary"); id. § 682.410(a)(5) ("The guaranty agency

shall exercise the level of care required of a fiduciary charged with the duty of investing the

money of others when it invests the assets of the reserve fund[.]"); id. § 682.419(a) (explaining

that the funds in the federal fund are property of the United States and that the "guaranty agency

must exercise the level of care required of a fiduciary charged with the duty of protecting,

investing, and administering the money of others").[12] Thus I find that PHEAA as a guaranty

agency stands in a fiduciary relationship to the DoE. Rowe, 559 F.3d at 1034 (holding guaranty

agencies act as fiduciaries of the DOE when they operate under FFELP and collecting cases in

which other courts hold the same).[13]

---

[12] The Secretary of Education has repeatedly stated that guaranty agencies owe a
fiduciary duty to the DOE. See Fed. Family Educ. Loan Program, 61 Fed. Reg. 49,382, 49,382
(Sept. 19, 1996) ("In light of its role in the program and its responsibility for holding and
protecting Federal funds, the guaranty agency's role is best characterized as that of a trustee
holding money for the benefit of another. . . . Under these circumstances, a guaranty agency is
responsible for acting as a fiduciary responsive for protecting the interests of the Department and
taxpayers in the reserve funds."); id. (stating that guaranty agencies are "trustees for the Federal
Government and are expected to comply with fiduciary standards").

[13] Donohue argues that Rowe establishes that a court must "consider Defendant's
obligations and whether its collection activity [sic] were 'incidental' to such obligations" in
determining whether a defendant was acting as a guaranty agency under the HEA or merely as a
collection agency. Pl.'s Reply Br. ECF p. 10. The Rowe court held that "guaranty agencies act
as fiduciaries of the DOE when they operate under the FFELP" and that the defendant in that
case was not a guarantor but rather a collection agent assigned the loan after its default and
accordingly fell within the FDCPA's definition of debt collector. Rowe, 559 F.3d at 1034.
However, the court also noted that "if this were a case in which [defendant] had guaranteed the
loan to [plaintiff], and had then undertaken to collect on the loan after default, its collection

PHEAA is a statutorily created agency of and for the Commonwealth of Pennsylvania, see 24 Pa. Cons. Stat. Ann. § 5101; see also Walker v. Am. Educ. Services, No. 09-2276, 2010 WL 1687613, at *1 (M.D. Pa. Apr. 26, 2010), with a mandate to "to make loans available to students and parents for postsecondary education purposes," 24 Pa. Stat. Ann. § 5102, and the power to guaranty student loans.  24 Pa. Stat. Ann. § 5104.  Donohue expressly pleads that PHEAA itself is currently garnishing her wages, see also Second Am. Compl. ¶¶ 23, 36, 76, 79-80, a power reserved to guaranty agencies under the HEA.  See 20 U.S.C. § 1095a.  Accordingly, I find that PHEAA, doing business as AES, was the guarantor of Donohue's federal student loans that are the basis of her claims.  Support for this finding is also found in the disclosure statements that PHEAA attaches to its motion which identify AES as the guarantor of Donohue's loans.  See Def.'s Mot. Dismiss Ex. B, ECF p. 53, 57, 61, 65, 69, 73, 77, 81, 85, 89.  Because PHEAA was the guarantor of Donohue's student loans, it is not a debt collector under the FDCPA and thus Donohue's federal claim against it fails.[14]

In light of my determination that Donohue's complaint fails to state a valid claim against PHEAA under federal law the only claims remaining in this lawsuit are Donohue's state law claims under the FCEUA and UTPCPL against PHEAA and the Executive Committee – claims before this Court only due to supplemental jurisdiction.  "The district courts may decline to exercise supplemental jurisdiction over a claim . . .  if . . . the district court has dismissed all

---

activities would have been 'incidental to' its fiduciary duties to the DOE within the meaning of the FDCPA."  Id. at 1035.  I find that the latter situation is analogous to Donohue's allegations concerning PHEAA's conduct in this case.

[14] I also find that to the extent that any FDCPA violations are asserted against the PHEAA Executive Committee that those claims fail as well because the Executive Committee is comprised of employees of PHEAA, an instrumentality of Pennsylvania, and thus their efforts toward collecting the debts in this case was in the performance of their official duties and thus falls within an enumerated exclusion from the FDCPA's definition of debt collection.  See 15 U.S.C.A. § 1692(a)(6)(C).

claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995). I decline to exercise supplemental jurisdiction over plaintiff's state law claims.

       An appropriate Order follows.