IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MEGAN DONOHUE : CIVIL ACTION
: NO. 12-1460
v. :
:
REGIONAL ADJUSTMENT BUREAU, :
INC., et al. :

O'NEILL, J. MARCH 28, 2013

## **MEMORANDUM**

Now before me is defendant Enterprise Recovery System's[1] motion to dismiss the second amended complaint (Dkt. No. 15) and plaintiff Meghan Donohue's response thereto (Dkt. No. 19). For the following reasons I will deny in part and grant in part defendant's motion.

## **BACKGROUND**

Donohue brings two claims against ERS arising from the following factual allegations. Donohue alleges that ERS is a business regularly engaged in the business of collecting debts nationwide. Second Am. Compl. ¶ 4. Donohue avers that ERS regularly attempts to collect debts alleged to be due to another and is a debt collector as defined by 15 U.S.C. §1692a(6). Id. Donohue contends that "ERS, by and through defendant John Doe believed named Richard Mobley, engaged in collection activity against plaintiff for four (4) federal student loan debts totaling $12,154.16." Id. at ¶ 40. She further alleges that "[w]hen John Doe engaged [Donohue] on behalf of ERS in collection calls, the only rehabilitation offered to [her] was the promise of

---

[1] Donohue filed her second amended complaint on June 18, 2012. Initially, Donohue asserted claims against Pennsylvania Higher Education Assistance Agency, various PHEAA individual defendants, and Regional Adjustment Bureau, Inc. By Order dated February 19, 2013 I dismissed the plaintiff's FDCPA claims against PHEAA and the PHEAA individual defendants and declined to exercise supplemental jurisdiction over the state law claims against those defendants. Defendant Regional Adjustment Bureau, Inc. answered the second amended complaint on March 8, 2013.

1

settlement forgiving $2,200 in penalties if she could pay $3,000 over three (3) months down payment. Id. at ¶ 41. Further, "ERS told [Donohue] that if she did not make a down payment and agree to monthly payments directly deducted from her account, her wages would be garnished in the approximate amount of $600 per month." Id. at ¶ 42. Donohue states that "[s]uch a sum does not reflect a reasonable payment based on the [her] entire financial circumstances." Id. She alleges that despite her protests that "she should [sic] not pay the requested amount on her monthly budget, at no time did ERS ever discuss rehabilitation of her student loan debt . . . until February 22, 2012." Id. at ¶ 43. She alleges, however, that "[o]n or about February 22, 2012, [Donohue] spoke to John Doe of ERS and stated that perhaps an attorney should discuss rehabilitation options with ERS on her behalf." Id. at ¶ 44. To this, "John Doe responded . . . by . . . reviewing plaintiff's monthly finances with her by a written questionnaire and conclude[ing] that, after the garnishment, she had no disposable income to pay the debts." Id. at ¶ 45.

Donohue brings suit individually and on behalf of two classes of Pennsylvania borrowers. Id. at ¶ 34. Donohue defines the first proposed class, Class A, as "a Class of Pennsylvania borrowers for claims under the [Fair Debt Collection Practices Act] for all federal loan debtors whose loans went into default, had no judgment obtained related to the default, and were collected upon by ERS or RAB." Id. at ¶ 55. She alleges that the

> principal question is whether Defendants ERS, RAB, and PHEAA violated the FDCPA and [Fair Credit Extension Uniformity Act] by failing to make required disclosures and calculations (or making disclosures and calculations that are at odds with those under the Federal student loan rehabilitation program) of required rehabilitation payments, failing to disclose the fact that nine timely payments of these new payments in 10 consecutive months would rehabilitate the loan, and providing the expedited route to removal of default from credit reports.

2

Id. at ¶ 57. The second proposed class is defined as "a class of Pennsylvania borrowers under the [Pennsylvania Unfair Trade Practices and Consumer Protection Law], FCEUA, and common law where said federal loans went into default, had no judgment obtained related to the default, and were owned and/or serviced by PHEAA." Id. at ¶ 55. In this class the

> principal question is whether Defendants, excluding PHEAA, violated the UTPCPL, by failing to make required disclosures and calculations (or making disclosures and calculations that are at odds with those under the Federal student loan rehabilitation program) of required rehabilitation payments, failing to disclose the fact that nine timely payments of these new payments in 10 consecutive months would rehabilitate the loan, and providing the expedited route to removal of default from credit reports.

Id. at ¶ 58.

In Count I of her second amended complaint, Donohue asserted claims under the FDCPA on behalf of herself and the members of proposed Class A against defendants ERS, RAB and PHEAA. Id. ¶¶ 64-67. She contends that in its efforts to collect on her student loans, ERS was attempting to collect a "debt" as defined by the FDCPA—a debt which was incurred for personal, family or household purposes. Id. at ¶ 65. Donohue asserts that ERS violated the FDCPA by, inter alia, 1) engaging in conduct the natural consequence of which is to harass, oppress, or abuse a person; 2) making false representations of the character, amount, or legal status of any debt; 3) representing that nonpayment of any debt will result in the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action; 4) falsely representing legal action that cannot be taken; 5) falsely representing that Donohue's nursing license could be taken; and 6) attempting to collect a debt not permitted by law. Id. at ¶ 67.

In Count II of her second amended complaint, Donohue asserts claims under the UTPCPL and the FCEUA on behalf of herself and the members of proposed Class B against

3

defendants ERS and RAB. ² Id. ¶¶ 68-76. She alleges that because of the acts and omissions of the defendants in their collection contacts with her, Donohue has been deprived of lawful rehabilitation options for her student loans. Id. at ¶ 74. She claims that she "and Class A [sic] have suffered ascertainable loss by the monthly dollar differential between what she is currently paying under the onerous garnishment plan and what she would have paid under a rehabilitation plan that was affordable based on a fair accounting of her monthly finances and expenses." Id. at ¶ 76.

ERS has moved to dismiss plaintiff's claims against it in their entirety.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Typically, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," though plaintiff's obligation to state the grounds of entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." Id. (citations omitted). The complaint must state "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Wilkerson v. New Media Tech. Charter Sch. Inc., 522 F.3d 315, 321 (3d Cir. 2008), quoting Twombly, 550 U.S. at 556. The Court of Appeals has made clear that after Ashcroft v. Iqbal, 556 U.S. 662 (2009), "'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

---

² Per a stipulation of the parties, Donohue has withdrawn her FCEUA claim against PHEAA. See Dkt. No. 22.

suffice.' To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009), quoting Iqbal, 556 U.S. at 678. The Court also set forth a two part-analysis for reviewing motions to dismiss in light of Twombly and Iqbal:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."

Id. at 210-11, quoting Iqbal, 556 U.S. at 679. The Court explained, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Id., citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679.

## DISCUSSION

I.  Alleged Violations of the FDPCA

I will not dismiss Count I of plaintiff's complaint in its entirety because I find that Donohue has alleged sufficient facts that suggest that ERS's debt collection activities violated the FDCPA. The FDCPA protects debtors from "abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692. It is to be construed broadly so as to effect its purpose, Womack v. Nat'l Action Fin. Services, No. 06-4935, 2007 WL 2155669, at *3 (E.D. Pa. July 25, 2007), citing Brown v. Card Serv. Ctr., 464 F.3d 450, 453 (3d Cir. 2006),

5

and provides a remedy for debtors who have been subjected to abusive, deceptive or unfair debt collection practices. Pollice v. Nat'l Tax Funding, L.P., 225 F.3d 379, 400 (3d Cir. 2000). The provisions of the FDCPA generally apply only to debt collectors. Id. at 403. To state a claim under the FDCPA, a plaintiff must establish that "(1) he or she is a 'consumer'[3] who is harmed by violations of the FDCPA; (2) the 'debt'[4] arises out of a transaction entered into primarily for personal, family, or household purposes; (3) the defendant collecting the debt is a 'debt collector'; and (4) the defendant has violated, by act or omission, a provision of the FDCPA." Berk v. J.P. Morgan Chase Bank, N.A., No. 11–2715, 2011 WL 4467746, at *3 (E.D. Pa. Sept. 26, 2011), citing 15 U.S.C. § 1692a-o.

The FDCPA defines a "debt collector" as any person who "in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect . . . debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The Court of Appeals instructs that "[c]reditors—as opposed to 'debt collectors'—generally are not subject to the FDCPA." Pollice, 225 F.3d at 403. That is "[t]he [FDCPA] does not apply to persons or businesses collecting debts on their own behalf." Staub v. Harris, 626 F.2d 275, 277 (3d Cir. 1980). Rather, "[t]he primary persons intended to be covered are independent debt

---

[3] The FDCPA defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3).

[4] "Debt" is defined under the FDCPA as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." Dixon v. Golden-Masano-Bradley, Law Firm, 228 F. App'x 142, 143-44 (3d Cir. 2007), quoting 15 U.S.C. § 1692a(5).

6

collectors." F.T.C. v. Check Investors, Inc., 502 F.3d 159, 173 (3d Cir. 2007) (citations omitted).[5]

ERS in its motion to dismiss argues that Donohue has failed to allege sufficiently specific or detailed factual allegations against it to survive a motion to dismiss. ERS Mot. Dismiss ECF p. 7. Its motion then proceeds to parse the six paragraphs it identifies as alleging facts against ERS.

 a. Alleged Violations of Section 1692(d) of the FDCPA

Under Section 1692(d) of the FDCPA, a "debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692(d). The statute lists a number of examples of harassing conduct under the provision, including, inter alia, the use of violence to harm a person or his property, the use of obscene or profane language, or repeated attempts to phone a person with intent to annoy, abuse, or harass. Id. Violations of 1692d typically involve "tactics intended to embarrass, upset, or frighten a debtor." Hammett v. Allianceone Receivables Mgmt, Inc., No. 11-3172, 2011 WL 3819848, at *5 (E.D. Pa. Aug. 30, 2011). Debt collection attempts do not constitute harassment when they do not "threaten [p]laintiff, contain any offensive

---

[5] The Court of Appeals has explained that

> The term "debt collector" . . . was intended to cover all third persons who regularly collect debts. . . . The Senate Committee explained that the FDCPA was limited to third-party collectors of past due debts because, unlike creditors, "who generally are restrained by the desire to protect their good will when collecting past due accounts," independent collectors are likely to have "no future contact with the consumer and often are unconcerned with the consumer's opinion of them."

F.T.C. v. Check Investors, Inc., 502 F.3d 159, 173 (3d Cir. 2007), quoting S. Rep. No. 382, S. REP. 95-382, 2, 1977 U.S.C.C.A.N. 1695, 1696-97 (internal citations omitted).

7

language, or attempt to coerce the payment of the debt in any way." DeGeorge v. Fin. Recovery Servs., Inc., No. 11-04288, 2012 WL 4473229, at *3 (E.D. Pa. Sept. 28, 2012).

ERS contends that the second amended complaint contains "no allegations that ERS or its collectors harassed, oppressed, or abused" Donohue. ERS Mot. Dismiss ECF p. 7-8. Donohue counters that ERS used threats in the course of its debt collection efforts, and while ERS's motion argues "that at least one of the threats [ERS] made in the course of its illegal collection activities would have been legally sanctioned (garnishment of wages)," the motion does not address "the wider claims of its wrongdoings (such as demanding a minimum payment that was far greater than the amount Plaintiff would be entitled to under the Federal student loan rehabilitation program)." Id.

I find that Donohue's spartan descriptions of ERS's collection efforts do not sufficiently allege that its debt collection tactics were oppressive, abusive or constituted harassment. Donohue in her second amended complaint alleges that ERS offered to forgive certain penalties if she paid $3,000 over three months, Second Am. Compl. ¶ 41, and threatened garnishment if such payments were not made. Id. at ¶ 42. She claims that she protested that she could not pay the requested amount, id. at ¶ 43, and at some point, she suggested that "perhaps an attorney should discuss rehabilitation options with ERS on her behalf," id. at ¶ 44, at which point ERS "responded to mention of the attorney by then reviewing plaintiff's monthly finances with her by a written questionnaire and conclude[ing] that, after the garnishment, she had no disposable income to pay the debts." Id. at ¶ 45. These allegations do not suggest that ERS sought to

harass, oppress or abuse Donohue and thus I will dismiss Count I of Donohue's complaint to the extent that it alleges violations of section 1692(d) of the FDCPA against ERS.[6]

      b.  <u>Alleged Violations of Section 1692(e) of the FDCPA</u>

Under section 1692(e) of the FDCPA a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692(e). More than sixteen different illegal practices are listed in section 1692(e), including false statements about "the character, amount, or legal status of any debt" and "threat[s] to take any action that cannot legally be taken or that is not intended to be taken." <u>Id.</u> Although the list is not exhaustive, § 1692(e) clearly seeks to curb abusive practices tied to the "collection" of consumer debt. <u>Benner v. Bank of Am., N.A.</u>, No. 11-6574, 2013 WL 85913, at *18 (E.D. Pa. Jan. 7, 2013). In analyzing a claim under the FDCPA and whether or not a statement has the ability to mislead or deceive a debtor, the Court of Appeals has adopted the "least sophisticated debtor" standard. <u>Rosenau v. Unifund Corp.</u>, 539 F.3d 218, 221 (3d Cir. 2008). The least sophisticated debtor standard is used to effectuate "the basic purpose of the FDCPA . . . to protect 'all consumers, the gullible as well as the shrewd'" <u>Id.</u> (citations omitted). Under this standard, a communication is deceptive for purposes of the FDCPA if "it can be reasonably read to have two or more different meanings, one of which is inaccurate, viewed from the perspective of the least sophisticated consumer." <u>Campuzano-Burgos v. Midland Credit Mgmt., Inc.</u>, 550 F.3d 294, 298-99 (3d Cir. 2008).[7] This includes false representation of the "character, amount or

---

[6] I will permit Donohue to amend her complaint as to alleged violations of this section of the statute. <u>Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 108 (3d Cir. 2002) ("A motion to dismiss will typically be granted with leave to amend "unless [amendment] would be inequitable or futile.")

[7] The Court of Appeals has stated that the least sophisticated debtor standard:

9

legal status of any debt," 15 U.S.C. § 1692(e)(2)(A), a debt collector's threat to take any action that cannot legally be taken, id. § 1692(e)(5), or more broadly the "use of any false representation or deceptive means to collect or attempt to collect any debt." Id. § 1692(e)(10).

ERS argues that it did not misrepresent the character, amount or legal status of the debt, and that Donohue does not dispute the amount of the debt ERS attempted to collect nor that ERS was not entitled to collect the debt. ERS Mot. Dismiss ECF p. 8. ERS also contends that "ERS was within its rights to suggest administrative wage garnishment would be enacted if [Donohue] failed to make appropriate monthly payments." Id. Finally, ERS contends that it "provided [Donohue] opportunities to contest and to settle the debt, and by [her] own admission . . . [ERS] allegedly was responsive to her concerns that she would be unable to afford loan payments." Id at 9.

Donohue counters, arguing that "by dictating repayment terms for the student debt unaffordable to plaintiff, ERS by act and omission falsely represented the student debt to not be subject to the Federal Code's requirement that the repayment terms be affordable based on a paper analysis of the borrower's financial circumstances." Donohue Resp. ECF p. 4. Donohue further asserts that ERS failed to "engage in the lawful rehabilitation with plaintiff," failed to consider her financial circumstances when offering payment terms, and that any discussion of rehabilitation only occurred after plaintiff threatened attorney involvement to secure her rights to

---

> is less demanding than one that inquires whether a particular debt collection communication would mislead or deceive a reasonable debtor. Nevertheless, the least sophisticated standard safeguards bill collectors from liability for "bizarre or idiosyncratic interpretations of collection notices" by preserving at least a modicum of reasonableness, as well as "presuming a basic level of understanding and willingness to read with care [on the part of the recipient]."

Campuzano-Burgos, 550 F.3d at 298-99 (citations omitted, alterations in original).

such lawful rehabilitation." Id. at 4-5. This "belated consideration of affordability in proposing repayment terms to plaintiff occurred over one month after [ERS's] initial contact with plaintiff." Id. p. 5 n.1. Donohue argues that such activity is deceptive under the FDCPA. I agree with Donohue.

In her second amended complaint Donohue alleges that ERS told her "that if she did not make a down payment and agree to monthly payments directly deducted from her account, her wages would be garnished in the approximate amount of $600 per month" and that "[s]uch a sum does not reflect a reasonable payment based on the [debtor's] entire financial circumstances." Second. Am. Compl. ¶ 42. Further, she alleges that after ERS reviewed Donohue's "monthly finances with her by a written questionnaire [it] concluded that, after the garnishment, she had no disposable income to pay the debts." Id. at ¶ 45. While a debt collector may garnish a borrower's wages if the borrower is in default, see 20 U.S.C. § 1095a ("Notwithstanding any provision of State law, a guaranty agency . . . may garnish the disposable pay of an individual to collect the amount owed by the individual if he or she is not currently making required repayment . . . ."), a precursor to garnishment under the statute is that "the individual shall be provided an opportunity to enter into a written agreement with the guaranty agency or the Secretary. . . to establish a schedule for the repayment of the debt." Id. § 1095a(4). Prior to garnishment, the statute also requires that the borrower "shall be provided written notice . . . a minimum of 30 days prior to the initiation of proceedings . . . informing such individual of the nature and amount of the loan obligation to be collected, the intention of the [collector], to initiate proceedings to collect the debt through deductions from pay, and an explanation of the rights of the individual . . . ." 20 U.S.C.A. § 1095a(2). Viewing the allegations in the second amended complaint in the light most favorable to Donohue, I find she has sufficiently alleged

11

conduct by ERS that did not satisfy these prerequisites regardless of ERS's argument that it was "was within its rights to suggest administrative wage garnishment would be enacted if Plaintiff failed to make appropriate monthly payments." ERS Mot. Dismiss ECF p. 8.

Moreover, Donohue alleges that her mention to ERS of contacting an attorney to discuss loan rehabilitation options resulted in ERS conducting a more thorough review of her finances. It is unclear exactly what Donohue means in her allegation that after "reviewing plaintiff's monthly finances with her by a written questionnaire [ERS] concluded that, after the garnishment, she had no disposable income to pay the debts." Second Am. Compl. ¶ 45. There are no further allegations in the second amended complaint about ERS's collection efforts. However, ERS does not dispute the truth of this allegation nor contend that $600 was, in consideration of Donohue's financial circumstances, a lawful amount to garnish from her monthly wages. It is clear that federal statutes and regulations governing student loan debt require that when a borrower is in default that the payments demanded from the borrower by a debt collector take into consideration her entire financial circumstances. See 20 U.S.C. § 1078-6(a)(B) ("Neither the guaranty agency nor the Secretary shall demand from a borrower as monthly payment amounts described in subparagraph (A) more than is reasonable and affordable based on the borrower's total financial circumstances."); id. § 1078-6(b) ("guaranty agency shall not demand from a borrower as a monthly payment amount under this subsection more than is reasonable and affordable based upon the borrower's total financial circumstances."); 34 C.F.R. § 682.405(b)(iii) ("the determination of reasonable and affordable by the guaranty agency or its agents must[:] include a consideration of the borrower's . . . disposable income and reasonable and necessary expenses [. . . and] not be a required minimum payment amount, e.g. $50, if the agency determines that a smaller amount is reasonable and affordable based on the borrower's

total financial circumstances"). Thus, I find that Donohue has sufficiently alleged that ERS did not follow these guidelines but rather conveyed to her a "rehabilitation plan" that did not consider her actual financial circumstances. Moreover, ERS's alleged offers of settlement and threats of garnishment plausibly may have led Donohue to believe that these were the only options available to her. Because I must construe the second amended complaint in the light most favorable to Donohue and view ERS's communications to Donohue from the perspective of the least sophisticated debtor, Campuzano-Burgos, 550 F.3d at 298, I find that Donohue has sufficiently alleged deceptive or misleading conduct on the part of ERS that violates section 1692(e) such that I will not dismiss Donohue's FDCPA claim to the extent that it asserts a cause of action against ERS for violations under section 1692(e).

    a. Alleged Violations of Section 1692(f)(1) of the FDCPA

Section 1692(f) of the FDCPA prohibits debt collectors from making use of unfair or unconscionable means to collect or attempt to collect any debt. 15 U.S.C. § 1692(f). Section 1692(f) "broadly prohibits improper means 'to collect or attempt to collect' any debt, and its list of violative conduct . . . is not exhaustive." Allen ex rel. Martin v. LaSalle Bank, N.A., 629 F.3d 364, 367 (3d Cir. 2011), cert. denied, 132 S. Ct. 1141 (2012). Explicitly proscribed is the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692(f)(1). Claims brought under this section of the FDCPA "are directly actionable, and '[t]he only inquiry under § 1692f(1) is whether the amount collected was expressly authorized by the agreement creating the debt or permitted by law.'" Fratz v. Goldman & Warshaw, P.C., No. 11-02577, 2012 WL 4931469, at *4 (E.D. Pa. Oct. 16, 2012), quoting Allen, 629 F.3d at 368. However, "[a] complaint will be deemed deficient under

[section 1692(f)] if it does not identify any misconduct beyond [that] which plaintiffs assert violate[s] other provisions of the FDCPA." Shand-Pistilli v. Prof'l Account Srv. Inc., No. 10-1808, 2010 WL 2978029, at *6 (E.D. Pa. Jul. 26, 2012), quoting Foti v. NCO Fin. Sys., Inc., 424 F. Supp. 2d 643, 667 (S.D.N.Y. 2006).

I find that this is such a case. Donohue does not allege that ERS's conduct constituted any of the enumerated prohibited acts in section 1692(f). Additionally, she does not argue that ERS's collection efforts, which are recapitulated in her amended complaint as occurring over the course of one or more phone calls, were unfair or unconscionable, and points to no authority which would support such a finding. Because other sections of the FDCPA address her claims, and because she does not identify improper conduct beyond that addressed by those other sections, I accordingly will dismiss her claim to the extent that it asserts a cause of action against ERS pursuant to section 1692(f). See Dicesari v. Asset Acceptance LLC, No. 11-6815, 2012 WL 4108944, at *3 (E.D. Pa. Sept. 18, 2012).

II. Alleged Violations of the FCEUA and the UTPCPL

In Count II of the second amended complaint Donohue asserts claims under the FCEUA and the UTPCPL on behalf of herself and the members of proposed Class B against defendants ERS and RAB. Second Am. Compl. ¶¶ 68-76. "The FCEUA is Pennsylvania's analogue to the FDCPA." Rubenstein v. Dovenmuehle Mortg., Inc., No. 09-721, 2009 WL 3467769, at *5 (E.D. Pa. Oct. 28, 2009). The FCEUA, 73 Pa. Stat. Ann. § 2270.1 et seq., prohibits "unfair methods of competition and unfair or deceptive acts or practices with regard to the collection of debts." Id. § 2270.2. The FCEUA also provides that: "[i]t shall constitute an unfair or deceptive debt collection act or practice under this act if a debt collector violates any of the provisions of the [FDCPA]." 73 Pa. Cons. Stat. Ann. § 2270.4(a). Thus, "[a] violation of the FDCPA is a per se

14

violation of the [FCEUA]." Sasscer v. Donnelly, No. 10-464, 2011 WL 6780954, at *3 (M.D. Pa. Dec.27, 2011); see also Glover v. F.D.I.C., 698 F.3d 139, 152 (3d Cir. 2012). Because I will not dismiss Donohue's FDCPA claim in its entirety, I will not dismiss her FCEUA claim. See Stuart v. AR Res., Inc., No. 10–3520, 2011 WL 904167, at *4 (E.D. Pa. Mar. 16, 2011) (declining to dismiss FCEUA claim since "a violation of the FDCPA constitutes a per se violation of the FCEUA"); Yelin v. Swartz, 790 F. Supp. 2d 331, 336 (E.D. Pa. 2011) (denying motion to dismiss FCEUA claim because plaintiff's FDCPA claim was valid); Jarzyna v. Home Props., L.P., 763 F. Supp. 2d 742, 749 (E.D. Pa. 2011) (same).

Further, a violation of the FCEUA "shall constitute a violation of [the UTPCPL]." 73 Pa. Stat. Ann. § 2270.5(a). Since the FCEUA does not provide individuals with the right to institute private causes of action for violations, individual plaintiffs must use the remedial provision of the UTPCPL, 73 Pa. Cons. Stat. § 201–9.2, to obtain relief for violations of the FCEUA . Benner v. Bank of Am., N.A., No. 11-6574, 2013 WL 85913, at *16 (E.D. Pa. Jan. 7, 2013).

The UTPCPL is designed to protect consumers from fraudulent and deceptive business practices, Neal v. Bavarian Motors, Inc., 882 A.2d 1022, 1029 (Pa. Super. Ct. 2005), and provides a private cause of action to "any person who purchases or leases goods or services primarily for personal family or household purposes and thereby suffers any ascertainable loss of money or property real or personal as a result of the use or employment by any person" of any practice prohibited by the act. 73 P.S. 201-9.2(a). "[T]he UTPCPL is to be liberally construed to effectuate its objective of protecting the consumers of this Commonwealth from fraud and unfair or deceptive business practices." Ash v. Cont'l Ins. Co., 923 A.2d 877, 881 (Pa. 2007). The statute prohibits "fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding" in the conduct of trade or commerce. 73 Pa. Stat. § 201–2(4)(xxi). Under the

UTPCPL, a deceptive act is "'conduct that is likely to deceive a consumer acting reasonably under similar circumstances.'" Seldon v. Home Loan Servs., Inc., 647 F. Supp. 2d 451, 470 (E.D. Pa. Aug. 4, 2009).

Because Donohue has alleged a viable claim under the FDCPA and the FCEUA, I find she has also stated a viable claim under the UTPCPL. See Stuart v. AR Res., Inc., No. 10-3520, 2011 WL 904167, at *5 (E.D. Pa. Mar. 16, 2011) (denying motion to dismiss UTPCPL claim and stating plaintiff "need only establish a viable claim under the FDCPA in order to state sufficient claims under the FCEUA and UTPCPL."); Yentin v. Michaels, Louis & Assocs., Inc., No. 11–0088, 2011 WL 4104675, at *1 (E.D. Pa. Sept.15, 2011) (denying defendant's motion to dismiss FCEUA and UTPCPL claims "[b]ecause a plaintiff that states a claim for violation of the FDCPA has also stated a claim under the FCEUA and UTPCPL"); Beckworth v. Law Office of Thomas Landis, LLC, No. 11-7277, 2012 WL 1361671, at *7 n.12 (E.D. Pa. Apr. 18, 2012) ("since Plaintiff has established a viable claim under the FDCPA, it has established a viable claim under the [UTPCPL]"). Accordingly, Donohue's claims under the FCEUA and the UTPCPL may proceed.[8]

An appropriate Order follows.

---

[8] I also note that the FCEUA prohibits plaintiffs from recovering damages under both the state and federal consumer protection laws. See 73 P.S. § 2270.5(c) ("Remedies available for violation of [the FCEUA] and the [FDCPA] . . . shall not be cumulative, and debt collectors who violate this act and the [FDCPA] shall not incur cumulative penalties."). However, "[a]lthough a plaintiff may not recover under both the state and federal laws, neither law bars a plaintiff from proceeding under both statutes before he or she chooses the state or federal remedy." Piper v. Portnoff Law Assocs., 216 F.R.D. 325, 328 (E.D. Pa. 2003).

16